# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ASHAKI DUBOSE o/b/o | } | |
| D.C.G., | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | **Case No.: 2:08-CV-081-JHH** |
| v. | } | |
| | } | |
| MICHAEL J. ASTRUE, | } | |
| Commissioner of Social Security, | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Ashaki Dubose (hereinafter "Plaintiff"), on behalf of her minor child D.C.G. (hereinafter "Claimant"), brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), and Section 1631(c) of the Social Security Act, 42 U.S.C. § 1383(c), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application on behalf of Claimant for Child Supplemental Security Income ("child SSI") under Title XVI of the Social Security Act.

## I.    Proceedings Below

Plaintiff protectively filed an application for child SSI on behalf of her son on May 17, 2005, alleging a disability onset date of May 1, 2005. (R. 109-10).   In September 2005, Plaintiff's application was denied initially. (R. 98-108).   On October 26, 2005, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"), (R. 33), which was held on January 22, 2007, in Birmingham, Alabama, (R. 43-97).

In the June 9, 2007 decision, the ALJ determined that Claimant was not disabled within the

meaning of the Social Security Act and was thus not eligible for child SSI benefits.  (R. 18-28).  A request for review of that decision was timely filed on June 14, 2007,  (R. 16-17, 8, 9-13),[1] and after the Appeals Council denied Plaintiff's request on November 15, 2007,   (R. 5-7), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.  *See*  42 U.S.C. § 1383(c)(3).

## II.        Claimant's Disability Allegations

At the time of the ALJ decision, Claimant was two months shy of his ninth birthday and "enrolled in grade school."  (R. 18-28, 49-50, 109).[2]  Plaintiff alleges that Claimant suffers from an attention deficit hyperactivity disorder ("ADHD") and a conduct disorder, which result in marked and extreme limitations in functionality.  (R. 51-55, 109, 156-58, 234-38).   According to Plaintiff, Claimant has "difficulty getting words out," (R. 120), "has to be supervised at all times," (R. 126), and engages in "lying and stealing," (R. 121).  (*See generally* Doc. # 10, at 2).

## III.       ALJ Decision

In 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the "Act"), which amended the statutory standard for determining child SSI.  *See* P.L. No. 104-193, 110 Stat. 2105.  The revised standard provides:

> [a]n individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

---

[1] Both counsel for Plaintiff and Plaintiff herself submitted argument and evidence to be considered by the Appeals Council.  (R. 8, 9-13, 251-65).

[2] Claimant was in third grade at the time of the hearing.  (R. 155).

2

42 U.S.C. § 1382c(a)(3)(C)(I).   On September 11, 2000, the Social Security Administration published final rules implementing the Act, which became effective on January 2, 2001.  65 Fed. Reg. 5471.  Consistent with Congressional intent, those regulations define the statutory standard of "marked and severe functional limitations" in terms of "listing-level severity."  *See* 20 C.F.R. §§ 416.902, 416.906, 416.924(a), 416.926a(a); 20 C.F.R. pt. 404, subpt. P, app. 1.

The sequential evaluation process for determining child disability consists of three parts. First, the ALJ determines whether the child is engaged in substantial gainful activity.  20 C.F.R. § 416.924(a).  Second, if the child is not engaged in substantial gainful activity, the ALJ determines whether the child suffers from a severe impairment or combination of impairments.  *Id*.  An impairment or combination of impairments is "severe" if it causes more than minimal functional limitations.  20 C.F.R. § 416.924(c).  Finally, if the child does suffer from a severe impairment or combination of impairments, the ALJ must determine whether the child's impairments are of listing-level severity, *i.e.*, whether they meet, medically equal, or functionally equal an impairment listed under the Listing of Impairments, Appendix I to Subpart P of Part 404 (the "Listings").  20 C.F.R. § 416.924(a); *Shinn o/b/o Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004).

To be functionally equivalent,  the child's impairments or combination of impairments must cause either "marked" limitations[3] in two broad categories of functioning, which are referred to as

---

[3] The ALJ will find that an individual has a "marked" limitation in a broad category of functioning when a child's impairment(s) "interferes seriously with [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R. 916.926a(e)(2). A marked limitation is "more than moderate" but "less than extreme." *Id.* "It is the equivalent of functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.*

"domains," or "extreme" limitation[4] in one domain.  20 C.F.R. § 416.926a(a).  The listed domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for self; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(I)-(vi).

The ALJ found that Claimant has not engaged in substantial gainful activity since the onset of his disability.  (R. 28, Finding No. 2).  Based upon the medical evidence presented, the ALJ concluded that Claimant has ADHD and a conduct disorder, which are "severe" impairments as defined by the Social Security Act.  (R. 28, Finding No. 3).  Nonetheless, the ALJ determined that Claimant's impairments neither meet, medically equal, nor functionally equal the requirements for any impairment in the Listings.  (R. 28, Finding No. 4).

The ALJ found that, based on treatment notes and school records, Claimant does not experience "marked" limitations in two of the broad categories of functioning nor "extreme" limitation in one broad category of functioning.  (R. 24-28, Finding No. 5).  After considering all of the evidence, the ALJ found that Claimant had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and health and physical well-being, and had no limitation in the domains of moving about and manipulating objects and caring for himself.  (R. 24-27, Finding No. 5).  Thus, the ALJ ruled that Claimant is not disabled as that term is defined in the Social Security Act and that Claimant, therefore, is not entitled to a period of benefits.  (R. 28, Finding No. 7).

---

[4] The ALJ will find that a child has an "extreme" limitation in a domain when a child's impairment(s) "interferes very seriously with [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R. 916.926a(e)(3). An extreme limitation is "more than marked" and "is the rating [given] to the worst limitations." *Id.* An "extreme" limitation, however, "does not necessarily mean a total lack or loss of ability to function." *Id.*

**IV.    Plaintiff's Argument for Remand or Reversal**

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration.  (Doc. # 10, at 12-13).  Plaintiff believes that the ALJ's decision is not supported by substantial evidence and improper legal standards were applied because the ALJ chose to discount opinions regarding Claimant's functional limitations that were submitted by: (1) his treating psychiatrist, Dr. Alaa Elrefai; and (2) his third grade teacher, Benita White.  (Doc. # 10, at 5-14).

**V.    Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations

5

omitted).   If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

## VI.     Discussion

Against that backdrop of applicable standards, the court rejects Plaintiff's request for remand and/or reversal.  As noted earlier, Plaintiff contends that the ALJ inappropriately discounted opinions regarding Claimant's functional limitations that were submitted in January 2007 by his treating psychiatrist, Dr. Elrefai, and his third grade teacher, Ms.White. (Doc. # 10, at 5-14; R. 156-58, 235-37).  The court will address each argument in turn.

### A.     Medical Opinion of Treating Psychiatrist Dr. Alaa Elrefai

Plaintiff first contends that the ALJ should have accorded substantial weight to a January 2007 form questionnaire submitted by treating psychiatrist Dr. Elrefai, which opined that Claimant has a marked degree of limitation in both his ability to acquire and use information and his ability to interact with and relate to others and an extreme degree of limitation in his ability to attend and complete tasks.  (Doc. # 10, at 5-9; R. 234-37).   Although the ALJ considered Dr. Elrefai's opinion, which was rendered after his treatment of Claimant for almost two years, the ALJ found that it was entitled to little weight.  (R. 24-27).   Specifically, the ALJ observed that, contrary to Dr. Elrefai's ultimate assessment of Claimant's limitations, "it is clear from [Dr. Elrefai's] own grades and treatment notes . . . that [Claimant] does not have very serious problems" in the domains of acquiring and using information, interacting with others, and maintaining attention and concentration. (R.

6

24-25).

Licensed physicians are credible medical sources whose opinions can be used as evidence in establishing an impairment. (20 C.F.R. § 416.913(a)). The regulations establish that the weight properly afforded to a medical opinion regarding the nature and severity of a claimant's impairments depends upon a number of factors, including the source's examining and treating relationship with the claimant, the evidence presented to support the opinion, the consistency of the opinion with the record as a whole, and the speciality of the medical source. *See* 20 C.F.R. § 416.927(d). The opinion of a physician, even a treating physician, may properly be discounted for good cause. *Crawford v. Commissioner*, 363 F.3d 1155, 1159-60 (11th Cir. 2004).

Indeed, although a treating physician's opinion is typically given "substantial or considerable weight," that opinion may deserve less weight under the following circumstances: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003)(affirming the ALJ's decision to give little weight to a treating physician's opinion due to several specific contradictions between the physician's opinion and other evidence of record). In other words, the weight given to a treating physician's opinion can be determined by consistency—generally, the more consistent an opinion is with the record as a whole, the more weight should be given to the opinion. 20 C.F.R § 416.927(d)(4). However, when it comes to an issue such as functional capacity or ultimate disability, the final determination is reserved for the Commissioner, not the treating physician. 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)(2006); *see* SSR 96-5p, 61 Fed. Reg. 34471 (1996).

In this case, the ALJ discounted Dr. Elrefai's January 2007 opinion regarding Claimant's

functional limitations because he determined that Dr. Elrefai's assessment was not supported by his own treatment records, which showed that Claimant's mental impairments were much improved with medication after one year of treatment.  (R. 23-27).  Plaintiff claims that the ALJ "selectively omitted," (Doc. # 10, at 6), and "selectively reported," (Doc. # 10, at 8), portions of Dr. Elrefai's treatment records, and she criticizes the ALJ for focusing too heavily on the progress made by Claimant while ignoring the severity of his condition in the first instance.  As outlined below, the court is not persuaded by Plaintiff's arguments, because the ALJ had good cause - which he articulated in his opinion - to discredit Dr. Elrefai's functionality conclusions.

In their arguments to the court, both of the parties focus their attention on Dr. Elrefai's Global Assessment of Functioning ratings ("GAF"), which he assigned to Claimant at various points throughout his treatment course as an indication of his progress and improvement.  The GAF is a numeric scale (0 through 100) used by mental health clinicians and doctors to rate an individual's overall level of functioning, with 0 being the worst and 100 being the best.  For example, a GAF score of 50 is at the better end of the "serious" range from 41-50, which "indicates serious symptoms or serious impairment in social, occupational or school functioning." American Psychiatric Association, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (4th ed., Text Revision, 2000) ("DSM-IV"). Moving up the scale, GAF scores in the "moderate" range of 51-60 suggest moderate symptoms (*e.g.,* flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers), while GAF scores in the "mild" range of 61-70 suggest "[s]ome mild symptoms (*e.g.*, depressed mood and mild insomnia) or some mild difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household).  *Id.*   An individual

with a GAF score in the range of 61-70 is "generally functioning pretty well, [with] some meaningful personal relationships." *Id.* Notably, the GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." DSM-IV, at 34. Because the GAF is merely a "snapshot" in time of an individual's status, it is sometimes operationalized as the *lowest* level of functioning for the past week. DSM-IV, at 33.

In this case, Claimant's GAF scores lend support to the ALJ's decision to discredit Dr. Elrefai's functionality assessment because they indicate significant improvement with treatment and medication. "A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988); *see also Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) (finding that hypertension controlled by medication is not disabling). Although Dr. Elrefai first assigned Claimant a GAF of 50 - which is at the better end of the "serious" range and just shy of "moderate" - that score was assessed in May 2005 when Claimant was first diagnosed by Dr. Elrefai with "severe ADHD and likely learning disability." (R. 219-23). Indeed, Claimant's initial GAF coincides with his alleged disability onset date of May 1, 2005, (R. 109-10), which serves as a benchmark of Claimant's condition right before he began treatment.

The record indicates that Claimant's condition vastly improved after treatment began. As the ALJ noted, after Claimant was placed on medication for ADHD by Dr. Elrefai, his GAF score increased to 55, which is in the middle of the "moderate" range. (R. 23, 212, 214, 223). By June 2006, after one year of treatment by Dr. Elrefai, (R. 239-50), Claimant's behavior and conduct disorders were still active, (R. 243), but his condition had so improved that his GAF rating was increased to 65, suggesting no more than mild symptoms, (R. 243-44, 23). Pursuant to Dr. Elrefai's

treatment plan, medication management continued thereafter.[5]   Treatment records from Western Mental Health Center confirm that although "Claimant was somewhat distracted and inattentive, [he nevertheless] was making progress with treatment." (R. 23).

It is not insignificant that Dr. Elrefai himself assigned these GAF scores to Claimant – unlike the descriptive observations in Dr. Elrefai's treatment notes, the numeric GAF score serves as a quantified indicator of Dr. Elrefai's perception of Claimant's progress.  As indicated by Dr. Elrefai's psychiatric records, and contrary to his January 2007 functionality assessment, the impact of treatment on Claimant's condition was significant – Dr. Elrefai himself reduced Claimant's functionality rating from "serious," to "moderate," and finally to "mild."[6]   *See Vuxta v. Commissioner of Social Sec.*, 194 Fed.Appx. 874, 876-77 (11th Cir. 2006)(finding that treating psychiatrist's initial assessment of claimant as extremely limited in social functioning was inconsistent with her later improvement with treatment and reduction of her GAF score from serious to moderate).

Moreover, the ALJ's decision to discount Dr. Elrefai's form conclusions regarding Claimant's functional limitations is supported by other evidence in the record that is contrary to Dr. Elrefai's assessment, including records of Claimant's school performance during the period of

---

[5] As before, Elrefai continued to tweak Claimant's medication.  In both July and December 2006, Claimant's Focalin was increased again. (R. 242, 250).

[6] Thus, Plaintiff's focus on Claimant's lowest GAF score of 50 - which was assessed before treatment had even begun - is misguided. (*See* Doc. # 10, at 6-7)("The ALJ apparently selectively omitted Dr. Elrefai's detailed psychiatric assessment of May 4, 2005 [and] GAF 50.")).  Moreover, Plaintiff's statement that Claimant "maintained a GAF of as low as 50 for a twelve month period which would have tended to establish a threshold twelve month period of disability on this basis," (Doc. # 10, at 7-8), is not supported by the record.  When Dr. Elrefai assigned Claimant a GAF of 65 in June 2006, he noted that **the lowest GAF** for the past year had been 50. (R. 244). He did not, however, indicate that Claimant had **maintained** a GAF of 50 for the past year.

treatment by Dr. Elrefai and a consultative psychological examination of Claimant which included an independent GAF rating. (R. 23). First, from 2005-2007, school records indicate that Claimant demonstrated "significant progress" – although he earned both good and bad grades with below average grades in conduct in 2005, Claimant's grades in 2007 were all very good (A's, B's, and C's). (R. 23-27, 146, 155). School performance consistent with increasing GAF scores for the same period further corroborates Claimant's improvement with treatment.

Moreover, the results of a consultative psychological examination performed by Dr. William B. Beidleman in August 2005 suggest that treatment was working. Although Dr. Beidleman's examination revealed ADHD, he nevertheless assigned Claimant a GAF of 61, (R. 23-27, 204-06), indicating that he was "generally functioning pretty well," DSM-IV, at 32-34. Even Plaintiff's arguments to this court appear to acknowledge the improvement in Claimant's condition:

> A new treatment plan was established in which [Claimant] was to maintain progress in academic performance, attention span and decreased restlessness. **Improvement was certainly indicated although not specifically stated** and D.C.G.'s diagnosis continued to be ADHD combined type severe, with educational and school problems noted to be severe on Axis IV.

(Doc. # 10, at 8)(emphasis added).

For all of these reasons, the ALJ's decision to discount Dr. Elrefai's January 2007 opinion about the ultimate issue of Claimant's functional limitations is supported by good cause. Dr. Elrefai's assessment of functionality was not only inconsistent with his own treatment notes, but it was also inconsistent with the other evidence of record.[7]

---

[7] Although Plaintiff suggests that the ALJ should have recontacted Dr. Elrefai to "clarify" his opinion before rejecting it, (Doc. # 10, at 8-9), the court is not persuaded that was necessary or prudent. Although recontacting a treating physician may be the proper action to take if the ALJ needs clarification as to that physician's opinion, *see* SSR 96-5p, 61 Fed. Reg. 34471, 34472 ("For treating sources, the rules also require that we make every reasonable effort to recontact such sources

**B.     Non-Medical Opinion of Teacher Benita White**

Plaintiff also contends that the ALJ should have given more weight to the non-medical functionality opinion of Benita White, who was Claimant's teacher for language arts, math, reading, science and writing. (R. 155).  On a form questionnaire submitted in January 2007, Ms. White opined that Claimant has extreme limitations in the domains of attending and completing tasks, interacting and relating to others, and moving about and manipulating objects, and a marked limitation in acquiring and using information. (R. 156-57).  Although the ALJ noted and considered this opinion, he found that it was entitled to little weight because it was inconsistent with Claimant's school grades and the medical treatment record, which both indicated only mild to moderate functional limitations. (R. 24-27, 155).

Plaintiff's brief expresses offense at the ALJ's apparent minimization of Ms. White's opinion in reporting her to be merely "a teacher," contending instead that her familiarity with Claimant's performance and behavior throughout the school day should have entitled her opinion to more weight. (Doc. # 10, at 9-10 (citing R. 23)).  The general policy permeating the Act's regulations is that ALJs should consider all available evidence, including non-medical evidence. 20 C.F.R. §§ 416.924a(a) ("[The ALJ] consider [s] all relevant information ( *i.e.*, evidence) in your case record.

---

for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us."), that is not what occurred here.  In this case, the ALJ needed no clarification nor explanation – he had before him a well-developed medical record regarding Claimant's functional ability, including Dr. Elrefai's own treatment notes, and his opinion does not state nor imply that the record was inadequate for him to make a disability determination.  *See* SSR 96-2p, 61 Fed. Reg. 34490, 34491 (1996) ("Ordinarily, development should not be undertaken for the purpose of determining whether a treating source's medical opinion should receive controlling weight if the case record is otherwise adequately developed.").  Thus, under the circumstances in this case, it was not improper for the ALJ to conclude, without recontacting Dr. Elrefai, that his opinion was due less than controlling weight.

The evidence in your case record may include information from medical sources ... and nonmedical sources, such as your parents, teachers, and other people who know you.").   Nevertheless, while educational personnel are helpful sources who can assist in establishing the severity of a claimant's impairments and his functionality compared with his peers, *see* 20 C.F.R. 416.913 (d)(2); 20 C.F.R. 416.924a(a)(2)(i-iii)), the regulations distinguish the level of consideration required for opinions from "acceptable medical sources" like licensed physicians and psychologists and opinions from "other sources" like educational personnel and friends.   20 C.F.R. § 416.913(a), (d)(1).   The regulations provide that an ALJ "may also use evidence from other sources to show the severity of your impairment(s) and . . .  if you are a child, how you typically function compared to children your age who do not have impairments."   20 C.F.R. § 416.913(d)(2), (4).

In this case, the ALJ did consider Ms. White's opinion that Claimant had marked or extreme limitations of function, but he found it to be inconsistent with the other evidence of record, including Claimant's grades for the 2007 school year (showing he was making A's, B's, and C's, with no grade below a 70) and the treatment records of Western Mental Health Center, which showed mild to moderate limitations of function.   (R. 24-27, 155).   For the same reasons expressed in Section VI.A, *supra*, with regard to Dr. Elrefai's ultimate functionality opinion, the court finds no error in the ALJ's consideration - and subsequent discounting - of Ms. White's non-medical opinion of Claimant's functional limitations.[8]

―――――――――――――――

[8] At the conclusion of Plaintiff's discussion regarding Ms. White's opinion, she suddenly diverts her argument to a criticism of the Appeals Council's consideration of two letters written by Ms. Henderson, another one of Claimant's teachers.  (Doc. # 10, at 11).  Plaintiff freely admits that Ms. Henderson's August 23, 2007 and October 2, 2007 letters post-date the ALJ decision by two and four months, respectively, (Doc. # 10, at 11 (citing R. 251-52)), but Plaintiff asserts that the Appeals Council "failed to demonstrate that they had considered the entire record [including those letters]. . . with a view to remanding." (Doc. # 10, at 11).

## VII.    Conclusion

For all of these reasons, the court concludes that the ALJ's determination that Claimant is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** this the ___9th___ day of July, 2009.

_James H. Hancock_
SENIOR UNITED STATES DISTRICT JUDGE

---

The Eleventh Circuit has held that "[w]hen the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision [the denial of review] is . . . subject to judicial review because it amounts to an error of law." *Falge*, 150 F.3d at 1324 (internal quotations omitted).  However, the Appeals Council is only required to consider evidence that is "new and material" and "*relates to the period on or before the date of the administrative law judge hearing decision*." 20 C.F.R. § 404.970(b)(emphasis added).

In this case, the Appeals Council was not obligated to consider Ms. Henderson's additional letters because, by Plaintiff's own admission, they do not relate to the time period before the date of the ALJ decision.  (Doc. # 10, at 11) ("These letters certainly postdate the ALJ decision by two and four months. However they serve to document continued problems and provide a continuum of opinion through and beyond the date of the ALJ decision."). Moreover, even if the letters were chronologically relevant and thus appropriately considered by the Appeals Council, the Council's denial of review nevertheless was appropriate because, even considering Ms. Henderson's reflections of Claimant (which do not materially differ from the observations of Ms. White), the ALJ's "action, findings, or conclusion [were not] contrary to the weight of the evidence currently of record" for the same reasons articulated in Section VI.B, *supra*.  *See* 20 C.F.R. § 404.970(b).